IN THE MATTER OF THE ESTATE OF WARREN T. GOLD-
ING, DECEASED

MABEL GOLDING, FORMERLY MABEL WRIGHT,
APPELLANT, *v.* A. E. PAINTER, AS PETITIONER
FOR THE PROBATE OF THE LAST WILL AND TESTA-
MENT OF WARREN T. GOLDING, DECEASED,
RESPONDENT.

No. 3202

March 7, 1938.                76 P. (2d) 1099.

*F. Raffetto* and *J. M. Frame,* for Appellant:

*Painter, Withers & Edwards* and *Melvin E. Jepson,* for Respondent:

## OPINION

By the Court, TABER, J.:

This is an appeal from a judgment of the second judicial district court, Washoe County, overruling objections to the probate of the last will of Warren T. Golding, deceased, and from an order denying a new trial. Appellant will sometimes be designated herein as objector, and respondent as petitioner.

In July 1927 Clara O. Golding commenced suit for divorce against Warren T. Golding. The parties entered into a written agreement whereby the husband, amongst other things, agreed, "within two days from the entry of a final judgment of divorce granted to either party in the above entitled case, to pay to said plaintiff the sum of Seven Thousand Five Hundred Dollars ($7500.00) cash, and also the said party of the second part hereby agrees to make and execute a will in accordance with the laws of the State of Nevada, which will remain in force and effect, and be effective at his

death, in which will the party of the second part devises, grants and bequeaths to the party of the first part the sum of Five Thousand Dollars ($5000.00), to be paid to her after the legitimate bills and expenses of the party of second part have been paid, and before any other bequests, gifts, devises or grants have been made or paid to any other person; it being intended that the party of the first part shall receive the said sum of Five Thousand Dollars ($5000.00) from the estate of the party of the second part after his legitimate creditors have been paid."

On July 16, 1927, a decree of divorce was awarded the wife, and on the same day the husband made his last will and testament wherein, after first providing for the payment of all legitimate bills, expenses, and indebtedness, he made this further provision: "Second: after the contents of the first paragraph have been complied with, I devise, grant and bequeath to Clara O. Golding, who has heretofore been my wife, the sum of Five Thousand Dollars to be paid her after the legitimate bills and expenses referred to in Paragraph 'First' of this will and before any other bequests, gifts, devises or grants have been made or paid to any other person, it being intended that said Clara O. Golding shall receive said Five Thousand Dollars from my estate after my legitimate creditors have been paid. This devise to Clara O. Golding is for the purpose of complying with the terms of a certain agreement in writing entered into between Clara O. Golding and myself, dated the 15th day of July, 1927, and is not in addition thereto but for the sole purpose of complying with said contract."

All the residue and remainder of testator's estate was given by said will to his four sisters and two brothers. Appellant was given nothing by the will and she was not mentioned in any way therein. Petitioner was nominated executor of said will. Mr. Golding died on August 21, 1936.

In due time respondent filed a petition for the probate of said will. Appellant filed written objections to the granting of said petition, alleging that very shortly after Mr. Golding had been divorced by Clara O. Golding as aforesaid, she, Mabel Golding, formerly Mabel Wright, became his common-law wife, that she remained such until his death in 1936, and that by reason of her said marriage said will was revoked. This contention is based upon section 9914 N. C. L. 1929, being section 10 of "An Act Concerning Wills," Statutes of Nevada 1862, p. 58, at page 59. Said section reads as follows: "If, after the making of any will, the testator shall marry, and the wife shall be living at the death of the testator, such will shall be deemed revoked unless she shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of such revocation shall be received."

A hearing was had upon appellant's objections to the probate of said will, and some eight witnesses, beside herself, testified in objector's behalf. At the conclusion of the showing made by objector, petitioner, without offering any evidence, moved the court for an order overruling her said objections. This motion was granted. Appellant moved for a new trial, which was denied.

At the hearing on said objections to the probate of Mr. Golding's will, objector took the stand in her own behalf. After testifying, without objections, that she and Mr. Golding had lived together as husband and wife ever since July 16, 1927, she further testified in part as follows:

"Q. What did he say to you at that time? A. He asked me to marry him.

"Q. How were you to marry—the Indian custom? A. Indian custom.

"Q. A common-law marriage? A. Yes."

A little later in the hearing, and while petitioner was

still occupying the witness stand on direct examination, the record shows the following:

"Q. What did he have to say? Did he ever speak of dying or not living always and what would become of you? Did he ever speak of that? A. When he got real sick I asked him, in case something happened to him, what am I going to do, and he said, 'Mabel, well, you are going to be well-fixed. Everything is made to you.'

"Q. What did he say to you about you being his wife and whatever belonged to him belonged to you?

"Mr. Jepson: Just a moment.

"The Court: You are hitting that statute pretty hard now, Mr. Frame.

"Mr. Edwards: It comes directly in conflict with the statute now, I move the testimony of the objector with reference to her conversation with Mr. Golding be stricken, on the ground and for the reason that it is testimony in violation of section 8966 and the other party to the transaction is dead.

"Mr. Frame: If it please the Court, this evidence is admitted without objection. It is my contention, that counsel had waived what is essentially a technical objection in a case of this kind, counsel cannot lay back and speculate on what the testimony of the witness may be and permit it to be admitted, even though it is inadmissible under the strict rule, and after he finds out what it is ask to strike it, and that is neither in good faith nor fair practice, nor is it by the rules of procedure. The objections must be made timely and counsel cannot wait until it is all before the Court and then ask to strike it.

"Mr. Edwards: I am amused at Mr. Frame's remark that it is not in good faith. We pointed it out this morning. Mr. Frame knows the questions he asked were in violation of that statute and we discussed it this morning, and we passed it by and we are not asking to take advantage and these questions are in violation of the statute and the Court has the right to understand, and if counsel didn't know of the existence of the statute

when we discussed it this morning, there might be some merit to the argument.

"Mr. Frame: Yes, and I knew of the existence of the statute.

"(Further discussion between counsel.)

"Mr. Edwards: To save time we will withdraw the objection. Let us understand, Mr. Frame, that that statute is in effect, and may I ask that you confine your examination of the witness, excluding any conversation of the witness with the deceased.

"Mr. Frame: I will try and proceed. I have some letters I want to identify and offer in evidence.

"The Court: Four of your questions are in violation of the statute. You asked the witness a question that it is possible nobody but herself and the decedent would know. That would be objectionable and if one or two questions there that go to the gist of the action that you asked her. The statute is broad in some respects and you can ask a number of questions but not the real thing that took place between them. The lips of the other party are sealed, and it would not be in accordance with this or other statutes to permit that evidence to be introduced by the parties directly interested. As you said this morning, I noticed you had a knowledge of the statute that you said other parties were not parties to the transaction. Those four questions will go out notwithstanding that counsel waives his objection. Proceed.

"Mr. Frame: If it please the Court, I want to take an exception, upon the ground that the testimony is relevant, competent and material and the objections to the same and the motion to strike the same came after a full examination of the witness upon the point and after the answers to the questions and after the testimony was given that is now asked to be stricken, and for that reason it amounts to counsel speculating on possibly the witness giving an answer favorable to him, and afterwards when it was not, moving to strike the testimony,

that it amounts to a waiver of any objection under the statute.

"The Court: Note the exception. Proceed."

Objector bases her appeal chiefly upon two grounds: First, that the district court erred in striking conversations between her and Mr. Golding testified to by objector on direct examination; second, that said court erred in holding that the testimony and evidence given by and in behalf of objector was insufficient to make out a prima facie showing that after Mr. Golding was divorced from Clara O. Golding, petitioner became his common-law wife, and continued to be such until the time of his death. The conclusion we have arrived at regarding the first assignment of error above mentioned makes it unnecessary for us to discuss the second.

Section 8966 N. C. L. 1929, provides, in part, as follows: "No person shall be allowed to testify: 1. When the other party to the transaction is dead. 2. When the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person, when the facts to be proven transpired before the death of such deceased person."

Section 8970 N. C. L. 1929 provides that three classes of persons cannot be witnesses. The third class consists of "Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person."

Respondent has not taken the position, either in his brief or oral argument, that if the district court erred in striking said testimony of the petitioner, it was harmless error. He does contend, however, that in striking said testimony the court did not err. He argues that the words "No person shall be allowed to testify" are a positive mandate of the legislature, imposing upon the

court the duty to prevent incompetent persons from testifying, that the legislature has the power to impose such a duty upon the courts, and that the incompetency of a witness under said statutes cannot be waived; that even if such incompetency of witnesses can be waived under some circumstances, petitioner was without power in this particular proceeding to waive objector's incompetency for the reason that, until and including the time of the hearing on appellant's objections in the district court, petitioner had not been appointed executor, nor had he qualified as such by taking the official oath and giving the statutory bond. "Again," as respondent contends, "the questions the appellants sought to have determined were not pertaining to the execution of the will, nor the nomination of the executor; she sought to establish that she was the widow of the deceased, and, as such, had a right of inheritance, neither of which could be determined by Counsel's failure to object in a proceeding seeking the establishment of the testament, and the appointment of a person to carry it into execution. Section 9603 N. C. L. 1929."

In support of the foregoing contentions, counsel for respondent have relied entirely upon their interpretation of the aforesaid statutes. They have not cited any case or other authority, except said statutory provisions.

We are clearly of opinion that one who is entitled to the protection of such statutes may waive the incompetency of the witness. Kinley v. Largent, 187 Cal. 71, 200 P. 937; Jones, Commentaries on Evidence, 2d Ed., vol. 5, sec. 2275; 70 C. J. pp. 372–373, sec. 490; 28 R. C. L. pp. 514–516, secs. 102,103.

We have not read a better statement of the law relating to waiver of incompetency of witnesses under such statutory provisions as those contained in said section 8966 N. C. L. 1929, than the following in said section 2275 of Jones' Commentaries of Evidence, at pages 4416, 4417: "The power of those entitled to the protection of such statutes to waive such protection is now

universally recognized. The only decisions to the contrary have now been overruled. As a matter of history, however, it is worthy of note that two early cases" (McHugh v. Dowd's Estate, 86 Mich. 412, 49 N. W. 216; Monfort's Adm'r v. Rowland, 38 N. J. Eq. 181) "went to the extent of holding that notwithstanding waiver an appellate court of its own motion might excise evidence within the terms of the statute. In later cases in the same jurisdiction, however, it is pointed out that testimony involving the estate of a decedent is not to be placed on the same ground as testimony to confidential communications between a person and his professional advisers, revelation of state secrets, or revelation of confidential communications between husband and wife. The reason for exclusion in the latter cases is not unfairness to one of the parties litigant if it were admitted, but because the interests of the party must succumb to the policy that insures perfect freedom of communication between client and counsel, the unity of the marriage state, protects communications between governmental departments, and secures the independence of grand jurors and the stability of verdicts. But, says the New Jersey Court (Rowland v. Rowland, 40 N. J. Eq. 281) : " 'The exception ingrafted upon the general competency of all parties, that where one is dead and is represented in the suit, then the living party shall not be permitted to testify, is only a regulation to secure mutuality in the action itself. The admission of such testimony affects no one but the parties, and none but the parties are interested in the exercise of the power given to exclude this testimony. It stands upon the same footing of any other testimony which might have been the subject of objection, and which the parties have admitted without objection. Now, the rule is well settled that a party or his counsel cannot sit by and accept the chance of a witness making evidence in his favor, and then, after

ascertaining its force, raise, for the first time, an objection to its competency.' Similarly the Michigan court has carefully distinguished the earlier case in that jurisdiction which apparently held that the statutory protection accorded estates of decedent's could not be waived."

■ Only those persons who are within the terms of the statute are entitled to claim its protection. Jones, supra, p. 4335; 70 C. J. 372, sec. 490. We incline to the view that petitioner was entitled to the protection of the provisions of said section 8966 N. C. L. 1929. Being entitled to such protection, he had the right and the power to waive the incompetency of objector as a witness, and as we have seen from the quoted record he expressly waived her incompetency as to said conversations. But even if petitioner was not entitled to the protection of the statute, then, in the absence of objection on the part of a person entitled to such protection, it was error for the court, of its own motion, to strike objector's testimony regarding the conversations with Mr. Golding.

■ It is said that in a majority of jurisdictions it is held that statutes prohibiting witnesses from testifying to transactions with a decedent are not applicable to proceedings to probate or to contest a will. Jones, supra, p. 4256. But the author goes on to point out that under the provisions of particular local statutes, testimony relating to certain matters such as to personal transactions with the deceased is incompetent irrespective of the character of the proceeding. In our opinion the reason which forbids the surviving party to testify in other cases applies with equal force to proceedings for the probate of a will where, as in the instant case, objector is seeking to nullify the will because of her alleged common-law marriage to Mr. Golding after his divorce from Clara O. Golding. We are unable to discover in the Nevada statute any evidence of an intent on the part of the legislature to except proceedings for

the probate of wills from the operation of the statutory prohibition. If, however, the statute does not apply to such proceedings, then certainly it was error to strike the said testimony given by objector.

Respondent contends that as this proceeding seeks merely the establishment of the testament and the appointment of a person to carry it into execution, and as the question sought by appellant to have determined does not pertain to the execution of the will or the nomination of an executor, his failure to object to the incompetent testimony is of no consequence. As we view the issue, however, objector under the provisions of section 9914 N. C. L. 1929, opposes the probate of Mr. Golding's will upon the ground, as she claims, that it was revoked by his subsequent marriage to her; and this issue was properly triable on the petition for probate. In re Larsen's Estate, 18 S. D. 335, 100 N. W. 738, 5 Ann Cas. 794. The stricken testimony was material and relevant. Its weight, and the credibility of the witness, were for the trial court to determine. If objector's testimony relating to conversations with the deceased had not been stricken, the district court might nevertheless have overruled her objections to the probate of the will; but this court cannot know what action the district court would have taken had said testimony not been stricken. It is for the trial court, in the first instance, to decide upon issues of fact such as that involved in the instant proceeding.

We must, therefore, reverse the judgment and order appealed from, and award a new trial to appellant. Judgment and order will be entered accordingly.